[No. C065804. Third Dist. Dec. 5, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
LADD DOUGLAS WIIDANEN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

[*]Pursuant to California Rules of Court, rules 8.1105(b) and rule 8.1110, this opinion is certified for publication with the exception of parts II through VII of the Discussion.

## COUNSEL

Scott Concklin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ROBIE, J.**—After a New Year's Eve house party involving a lot of drinking, defendant Ladd Douglas Wiidanen went into a bedroom where an acquaintance, John Doe, was sleeping and orally copulated him. Defendant was interviewed by police a few hours after the crime and gave false statements about what had happened. Following a trial where the defense was consent, a jury found defendant guilty of orally copulating an unconscious person.

In the published portion of this case, we hold that the trial court erred in instructing the jury with both the consciousness of guilt instruction (CALCRIM No. 362) and an unmodified version of the voluntary intoxication instruction (CALCRIM No. 3426). Unmodified, the voluntary intoxication instruction allowed the jury to consider defendant's voluntary intoxication *only* in deciding whether defendant knew the victim was unconscious during the oral copulation. This limitation erroneously prohibited the jury from considering evidence of defendant's voluntary intoxication in determining whether defendant made false or misleading statements relating to the oral copulation *knowing* the statements were false or intending to mislead. As we explain, however, the error here[1] was harmless.

## FACTUAL AND PROCEDURAL BACKGROUND

### A

### *The Prosecution's Case*

Defendant and Doe were at a New Year's Eve house party in December 2007. Doe had known defendant for about four months, as defendant would sometimes hang out at the house (which was two doors down from defendant's house) when Doe was visiting friends there. That night, Doe had come to the party around 7:00 or 8:00 p.m. with his girlfriend, J., and his brother. Defendant came around 10:00 p.m. The partygoers talked and played darts and pool.

Almost all the partygoers were drinking alcohol and most were intoxicated. Doe started feeling intoxicated around 12:00 or 12:30 a.m. Defendant was drinking beer. J. drank to the point of "slight[] intoxicat[ion]."

Sometime after midnight, the partygoers "decided that it was late." Around 2:00 or 3:00 a.m., J. went to sleep in the guest bedroom. Defendant, Doe, and Doe's brother stayed awake talking in the garage. Doe followed J. to bed

---

[1] An appropriate "use instruction" would prevent a recurrence of this error.

around 5:00 or 5:30 a.m. By that time, Doe thought everyone had left the party or gone to bed. As was his practice, he went to sleep naked. The room was completely dark.

Doe awoke to "fe[eling] a wet mouth around [his] [penis]."[2] Doe thought it was J., but when he reached down he felt a beard. Doe "pushed [the man's] face away." Then the man "reached up and started using his hand." Doe "grabbed his arm and threw it away."

"[T]he figure [then] kind of crawl[ed] to the door and then got up and . . . walked down the hall." It was at this point Doe recognized the figure as defendant. J. woke up, and Doe told her what had happened. Doe put on his "boxers" and confronted defendant, who was sitting at the kitchen table. Doe yelled at defendant, " 'Why the fuck were you doing that?' " Defendant responded, " 'I don't know what you're talking about. I didn't do anything.' " Doe pushed defendant a few times.

Doe's brother woke up and told defendant to leave. Defendant stood there for a little while saying, " 'I didn't do anything. I didn't do anything.' " Doe's brother told defendant to leave a few more times, and defendant eventually complied. Doe called police and told them what happened.

Rocklin Police Officer Jerrold Seawell was dispatched to the house at 7:30 a.m.[3] Doe told the officer defendant was the culprit, so the officer went to defendant's house. Officer Seawell talked to defendant in his front yard with none of his family present. When the officer told defendant, "there w[ere] allegations that he did oral copulation on the victim and [the officer] wanted to get his side of the story," defendant responded "he was intoxicated and could not remember." He had had approximately 24 beers from noon on New Year's Eve until 2:00 a.m. the next day. Defendant then rode with Officer Seawell to the police station for "further investigation."

At the police station, Rocklin Police Detective Chris Spurgeon interviewed defendant. A videotape of that interview was played for the jury. Defendant said he was "brought in" because "they said I orally copulated somebody." Defendant said he did not do it and was totally sure of that. He left the party around 2:00 a.m. He had no idea who was accusing him. The detective told him Doe was accusing him of—"basically [Doe] woke up and saw that you were giving him head in there." Defendant said, "no" and "I didn't know where his room was." Defendant did not get into an argument with anybody that night and was not in any of the bedrooms. Everybody was kind of going

---

[2] Doe believed the time was "[a]round 7:00. 7:30-ish. I do recall that because it was when the sun was coming up."

[3] Doe testified it took police "about a half hour to an hour" to respond.

off to bed, so he left. He did not come back after he left the party at 2:00 a.m. The detective then told defendant that Doe and his brother were accusing defendant of being there in the morning when Doe confronted him in the kitchen and the brother asked him to leave. The detective asked if those people were lying. Defendant replied, "Well . . . ." He continued saying he "had a lot to drink last night. . . . [¶] So if I came back I came back. I—I don't remember going back there. I might have gone back for another beer, but no I went home." He denied being "totally wasted drunk to the world." He was aware of his surroundings and would "[a]bsolutely" know if he had been in somebody's bedroom and was "100%" sure he was not in any of the bedrooms. He did not give "head" to anybody there. He may have come back to the house to get a beer, but if he had come back, he did not come back and "hang out" at the house or do "anything" "they" said he did. He did not remember whether Doe's brother told him to leave the house, because he was drunk. He did not remember the conversation with Doe's brother because he was drunk. It could have been possible he got into an argument with somebody but he was "[a]bsolutely" sure he did not "suck[] his dick." He "[a]bsolutely" was not so drunk that he "thought maybe [his] wife was there" and he "got[] [Doe] by mistake." He had no sexual contact with anybody in that house. He was absolutely sure "this could not have been hey I was drunk and I was horny. . . ."

After the interview, Detective Spurgeon asked defendant for a DNA sample, which defendant provided by swabbing the inside of his cheek with a Q-tip. The detective then asked for and received a similar sample from Doe. He also asked for and received swab samples from Doe's penis shaft and penis tip.

The DNA swabs were analyzed by a criminalist at the Department of Justice. Defendant's DNA was on both swabs taken from Doe's penis. A presumptive test for an enzyme in saliva came back positive and showed a high level of the enzyme on the penis shaft swab and a moderate level on the penis tip swab.

## B

### *The Defense*

Defendant's wife attended the neighbor's New Year's Eve party for 30 to 45 minutes. She did not have anything to drink and returned home by 11:00 p.m. She had a party at their own house with "children and family." Defendant "left after the countdown to go back to [the neighbor's] party." Defendant was back in bed by the time she woke up for the day, which was 6:30 a.m.

Rocklin Patrol Sergeant Thomas Dwyer administered a preliminary alcohol screen to defendant at approximately 9:30 a.m. on January 1, 2008. Defendant's reading was a blood-alcohol level of 0.22 percent. At around 10:00 a.m., he administered the same screen to Doe, whose reading was 0.17 percent.

In March 2010, an investigator from the Placer County District Attorney's Office interviewed J. "She did not discuss during that interview that it was [Doe's] habit or custom to sleep naked. She did not discuss during that interview that she planned to spend the night at [the house were the party was taking place] on 12/31/07."

## C

### Elements of Orally Copulating an Unconscious Person

■ Defendant was charged with orally copulating an unconscious person. (Pen. Code, § 288a, subd. (a).) The elements of the crime are (1) the defendant committed an act of oral copulation with another person; (2) the other person was unable to resist because he was unconscious of the nature of the act; and (3) the defendant knew that the other person was unable to resist because he was unconscious of the nature of the act.

## D

### Theories of the Case at Trial

The People's theory of the case during closing argument was defendant orally copulated Doe while Doe was sleeping and defendant selectively lied to police to prevent police from inculpating him in the crime.

Defense counsel's theory of the case during closing argument was the oral copulation was consensual. Defendant lied to the police about not having oral sex with Doe because defendant was a married heterosexual man. Defense counsel also argued the jury could find defendant not guilty if it found that because of defendant's voluntary intoxication, he was not aware Doe was unconscious at the time defendant orally copulated him.

## E

### Verdict and Judgment

The jury found defendant guilty of oral copulation of an unconscious person. The trial court suspended imposition of sentence and placed him on three years' probation.

F

*The Appeal*

Defendant appeals from the guilty verdict and resulting judgment. He raises arguments relating to the evidence, the instructions, prosecutorial misconduct, and the composition of the jury. He also claims cumulative prejudicial error. We find the court made two instructional errors but conclude they had no effect on the verdict.

DISCUSSION

I

*The Court Erred in Giving the Consciousness of Guilt
Instruction (CALCRIM No. 362) with an Unmodified Version
of the Voluntary Intoxication Instruction (CALCRIM
No. 3426), but the Error Was Harmless*

Defendant contends the court erred when it gave the consciousness of guilt instruction (CALCRIM No. 362)[4] with the voluntary intoxication instruction (CALCRIM No. 3426).[5] Specifically, defendant contends the voluntary intoxication instruction with the consciousness of guilt instruction erroneously prohibited the jury from using his voluntary intoxication to rebut the People's evidence of his consciousness of guilt, based on the People's claim he made

---

[4] CALCRIM No. 362 was given as follows:

"If the defendant made a false or misleading statement relating to the charged crime, knowing that the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt.

"If you conclude that the defendant made the statement, it is up to you to decide its meaning and importance. However, evidence that the defendant made such a statement cannot prove guilt by itself."

[5] CALCRIM No. 3426 was given as follows:

"You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant had the knowledge that the victim was unconscious of the act at the time of its occurrence.

"A person is voluntarily intoxicated if he or she becomes intoxicated by willingly using any intoxicating drugs, drink, or other substance knowing it could produce an intoxicating effect or willingly assuming the risk of that effect.

"You may not consider evidence of voluntary intoxication for any other purpose. If you conclude beyond a reasonable doubt the People have proved all of the elements of the crime, the mere fact that the defendant was voluntarily intoxicated is not a defense to the crime."

false or misleading statements relating to the oral copulation, *knowing* the statements were false or intending to mislead. He argues the instructions together created an "irrational permissive inference" in violation of due process.

Defendant is correct to the extent he claims the court erred in giving these instructions together in this case. CALCRIM No. 362 allowed the jury to infer defendant's consciousness of guilt if the jury found that defendant made false or misleading statements about the crime, knowing the statements were false or intending to mislead. CALCRIM No. 3426, however, prohibited the jury from considering that those false or misleading statements were made without knowledge they were false or misleading because defendant was intoxicated at the time he made those statements. This is because CALCRIM No. 3426 prohibited the jury from considering defendant's voluntary intoxication for any purpose other than to decide whether he had the knowledge the victim was unconscious of the oral copulation at the time it occurred.

■ This prohibition was error because a defendant's false or misleading statements made when he was intoxicated may not be probative of the defendant's veracity, if the jury believed the defendant was too intoxicated to know his statements were false or misleading. " '[I]ntoxication has obvious relevance to the question of awareness, familiarity, understanding and the ability to recognize and comprehend.' " (*People v. Reyes* (1997) 52 Cal.App.4th 975, 983 [61 Cal.Rptr.2d 39].) Here, for example, defendant made various statements to police a few hours after the incident that were false, even under defendant's theory of the case at trial. He repeatedly told police he did not orally copulate anybody at the party. If the jury believed that defendant made false statements such as these to police, it should have been allowed to consider whether he was intoxicated at the time he made those false statements and whether his intoxication prevented him from knowing those statements were false. If the jury so believed, those statements would not have been probative of defendant's consciousness of guilt.

■ While we find error, defendant takes his argument one step further. He claims CALCRIM No. 362 and CALCRIM No. 3426 together created an "irrational permissive inference" in violation of due process. "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify *in light of the proven facts before the jury*." (*Francis v. Franklin* (1985) 471 U.S. 307, 314–315 [85 L.Ed.2d 344, 353–354, 105 S.Ct. 1965], italics added.)

There was no due process violation here, because the "suggested conclusion," i.e., defendant was aware of his guilt when he made the false statements, was reasonable "in light of the proven facts before the jury." The People proved that defendant's DNA, most likely from his saliva, was found on Doe's penis.[6] "[E]mbrac[ing]" that the "DNA evidence [w]as irrefutable," defense counsel then argued to the jury the oral copulation was consensual. Therefore, defendant's statements to police that he did not orally copulate anybody at the party were false.[7] It was not reasonable that defendant made these false statements due to his intoxication (and therefore without knowledge they were false) because, as pointed out by the prosecutor during closing argument, defendant selectively remembered certain things about what allegedly happened at the party that, if believed, would exculpate him (i.e., he did not orally copulate anybody) but claimed a hazy memory about other facts (i.e., whether he returned to the house that night) that would not necessarily inculpate or exculpate him. That defendant had the ability to fake a clear memory about events that exculpated him and to fake a hazy memory about neutral facts suggested defendant knew how to contrive even while allegedly drunk. Therefore, the permissive inference, i.e., defendant was aware of his guilt when he made the false statements, was reasonable, and the court did not violate defendant's due process rights by giving these instructions.

■ For the same reason the instructions did not violate due process, the error in giving these instructions was harmless under the state law standard articulated in *People v. Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243]. Namely, it was not "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Id.* at p. 836.)

II–VII*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[6] On appeal, defendant asserts defendant's DNA could have ended up on Doe's penis because they were playing darts and pool together. "Thus, if [Doe] had [defendant]'s DNA on [Doe's] hands, because he handled objects [defendant] may have touched, [defendant]'s DNA could have been transferred from [Doe]'s hand to his penis during urination." These assertions are unsupported by the record.

[7] During closing argument, defense counsel admitted that defendant's statements about not having oral sex that night were false, but argued it was "obvious" why he lied, i.e., because he was a heterosexual married man.

*See footnote, *ante*, page 526.

## DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Nicholson, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 14, 2012, S199429.