Filed 9/4/13  P. v. Rivera CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LUIS ROSALES RIVERA,<br><br>    Defendant and Appellant. | G046458<br><br>(Super. Ct. No. 08CF0989)<br><br>O P I N I O N |

Appeal from a judgment and postjudgment order of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Judgment affirmed.  Postjudgment order affirmed as modified.

Michelle May, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

INTRODUCTION

Defendant Luis Rosales Rivera was convicted of first degree murder, having struck his roommate three or four times in the head with a sledgehammer. Defendant first argues that there was insufficient evidence of premeditation and deliberation. The evidence of motive, planning, and the manner of killing, however, supports the jury's finding that defendant committed first degree murder.

Defendant next argues the jury was incorrectly instructed regarding the ways in which it could consider evidence of defendant's voluntary intoxication, both at the time the crime was committed and during defendant's police interrogation. These arguments were forfeited because they were not raised in the trial court. We have nevertheless considered whether the failure to request additional or modified instructions constituted ineffective assistance of counsel, and we conclude that there was no violation of defendant's right to effective counsel. We therefore affirm the judgment.

Finally, defendant argues that the trial court erred in imposing an administrative fee under Penal Code section 1203.1, subdivision (*l*). We agree, and direct the trial court to amend the restitution order to delete the reference to the administrative fee.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Manuel Ramirez is the owner of a property located on Sycamore Avenue in Stanton.[1] Defendant lived with two other men—Ruben Rojo and Miguel Delacruz—in a garage on the property. On March 26, 2008, Rojo arrived at the garage about 4:00 p.m., after work. Delacruz was in the garage at that time. Rojo left to do his laundry between 5:00 and 6:00 p.m.; he saw defendant at a pizza parlor during that time. After returning

---

[1] We will refer to Manuel Ramirez and his son, Alberto Ramirez, by their first names to avoid confusion; we intend no disrespect.

2

to the garage, Rojo watched television with Delacruz for about an hour; about 9:00 p.m., they turned off the lights and went to sleep.

Rojo awakened to the sound of thumping and moaning. The overhead garage light came on, and Rojo saw defendant next to his own bed; defendant put on a sweater and then left "[f]ast."

Rojo saw that Delacruz's face was bloody and injured. Rojo went to Manuel's residence on the property. About a half hour later, Manuel and his son, Alberto, arrived in the garage. Using a blanket, Manuel and Alberto carried Delacruz's dead body into a nearby alley. Alberto tried to clean the bloody trail from the sidewalk, and to clean the garage. Manuel and Alberto discarded Delacruz's bloody mattress and bedding in a nearby vacant lot.

Investigators from the Orange County Sheriff's Department responded to a report of a body in an alley. Extensive blood spatter was found on the ceiling and on various items in the garage. A sledgehammer found in the garage tested positive for Delacruz's blood. No knife was found at the scene.

A forensic pathologist testified that Delacruz died as a result of severe blunt head trauma. Delacruz had suffered a crushing-type injury at the lower forehead and upper nasal area, which had been inflicted by a heavy object. The sledgehammer was consistent with the type of instrument that could have caused the type of injuries Delacruz had suffered. Delacruz's body showed no signs of defensive wounds.

About 6:30 a.m. on March 27, police investigators encountered defendant in front of the house next door to Manuel's house. Defendant was holding a 12-pack of beer, less one beer, and had a slight odor of alcohol about him. He did not attempt to run from the investigators. Defendant was observed to have what appeared to be blood on his shoe. He had no injuries on his hands or other parts of his body.

Defendant was arrested, and interviewed by homicide investigator Daniel Salcedo at the sheriff's department. Defendant was read his rights under *Miranda v.*

3

*Arizona* (1966) 384 U.S. 436, and waived those rights. Defendant was calm and cooperative throughout the interview, and did not appear intoxicated. Some of defendant's responses to Salcedo's questions were nonresponsive or responsive to a different subject matter.

When pressed by Salcedo, defendant admitted he had attacked Delacruz. Defendant told Salcedo that when he returned to the garage on the evening of March 26, he turned on the light, and saw Delacruz, who was lying in his bed, "straighten[] up" or "get[] up somehow." Defendant then lunged at Delacruz and hit him with whatever he could grab. He stated that Delacruz was not able to defend himself because defendant "didn't give him a chance." Defendant stated that he thought Delacruz was going to hit him, so he hit him first. He did not see Delacruz holding a knife that night, but assumed he had one because he always did. Defendant told Salcedo that, if given the chance, he would attack Delacruz again. He also accepted responsibility for committing the crime. When asked why he had attacked Delacruz that night, rather than at some other time, defendant responded that he had more anger inside him. He believed that Delacruz was "watching [him] sleep."

Defendant told Salcedo he did not have a good relationship with Delacruz, and defendant had wanted to fight Delacruz for about a year. He claimed Delacruz ordered him to clean the garage and the bathroom, and humiliated him. Defendant also told Salcedo that Delacruz had tried to pull down defendant's pants or underwear, and had twice tried to stab him.

Defendant told Salcedo he drank five Bud Light beers at a pizza parlor after work on March 26. He denied being drunk, and said he knew what he was doing when he attacked Delacruz. After the attack, defendant went to a bar, and had "a good time" drinking and dancing until the bar closed. Defendant fell asleep under a tree; when he woke up, he bought more beer before returning home.

4

Defendant's blood was drawn after his interview with Salcedo; at that time, defendant had a blood alcohol level of 0.11 percent.

Defendant was charged in an information with one count of first degree murder. (Pen. Code, § 187, subd. (a).) The information alleged, as a sentencing enhancement, that defendant personally used a deadly weapon in the commission of the crime. (*Id.*, § 12022, subd. (b)(1).) A jury convicted defendant of first degree murder, and found the enhancement to be true. The trial court sentenced defendant to one year plus 25 years to life, with the possibility of parole. Defendant timely appealed.

DISCUSSION

I.

*SUFFICIENCY OF THE EVIDENCE*

Defendant argues there was insufficient evidence to support an inference of premeditation and deliberation, and therefore contends the judgment should be reversed as to degree. "When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] . . . We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility. [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

"'An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.'

5

[Citation.] In this context, "'premeditated" means "considered beforehand," and "deliberate" means "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action."' [Citation.] We normally consider three kinds of evidence to determine whether a finding of premeditation and deliberation is adequately supported—preexisting motive, planning activity, and manner of killing—but '[t]hese factors need not be present in any particular combination to find substantial evidence of premeditation and deliberation.' [Citation.]" (*People v. Jennings* (2010) 50 Cal.4th 616, 645.) "'The process of premeditation and deliberation does not require any extended period of time. "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly. . . . " [Citations.]' [Citation.]" (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080.) Premeditation and deliberation may be shown by circumstantial evidence. (*People v. Anderson* (1968) 70 Cal.2d 15, 25.)

In this case, evidence of all three factors supports the jury's finding of premeditation and deliberation. The evidence showed defendant had a motive for murder. He stated during his police interrogation that his relationship with Delacruz was not friendly. He thought Delacruz had belittled and humiliated him. Defendant did not like Delacruz, thought he had a "big mouth," and believed Delacruz was "going to die anyway." Defendant told Salcedo that he hated Delacruz and would "kill him again" because of the way he had treated defendant. Defendant knew what he was doing when he killed Delacruz.

The evidence of the manner of the killing also supports the finding of premeditation and deliberation. Striking Delacruz three or four times in the head with a sledgehammer was so "'"particular and exacting"'" to warrant an inference that defendant was acting according to a preconceived design. [Citations.]" (*People v. Thomas* (1992) 2 Cal.4th 489, 518.)

Finally, the evidence of defendant's planning further supports the jury's finding of premeditation and deliberation. In *People v. Morris* (1959) 174 Cal.App.2d 193, 197-198, the court held the jury properly found a killing was premeditated, based on the evidence of planning. In that case, the victim was stabbed in the heart with a knife with a six- to seven-inch blade, and the defendant "'did not slash wildly or without aim.'" (*Id.* at p. 197.) Other circumstances showing the defendant's planning included the time and pretext for the defendant entering the premises, lack of verbal communication between the defendant and the two others he was with, the lack of surprise by one of the defendant's companions when the defendant attacked the victim, "the complete absence of any immediate provocation," and the defendant's ready access to the weapon. (*Ibid.*) All of these factors led the appellate court to conclude the jury could reasonably have found the killing was not a result of "'rash impulse hastily executed.'" (*Id.* at pp. 197-198.)

In this case, defendant, without any reasonable provocation, attacked Delacruz almost immediately after entering the garage and seeing Delacruz straighten up or get up. Defendant was prepared to quickly get an instrument capable of inflicting severe injury when used on a human head, and used that instrument to prevent Delacruz from having any chance to defend himself. He then left and went drinking and dancing, admittedly having a "good time." The evidence supported a finding that the killing of Delacruz was not a rash act, and "demonstrate[d] a choice and plan of conduct inconsistent with a conclusion that [defendant] did not premeditate the killing." (*People v. Morris*, *supra*, 174 Cal.App.2d at p. 197.)

## II.

### *INSTRUCTIONAL ERROR*

Defendant makes two claims of instructional error, both involving the jury instruction on voluntary intoxication. The jury was instructed with CALCRIM No. 625,

7

as follows:  "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way.  You may consider that evidence only in deciding whether the defendant acted with an intent to kill or the defendant acted with deliberation and premeditation.  [¶] A person is voluntarily intoxicated if he or she becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect.  [¶] You may not consider evidence of voluntary intoxication for any other purpose."  This instruction correctly states the law on the admissibility of evidence of voluntary intoxication.  (Pen. Code, § 29.4;[2] *People v. Turk* (2008) 164 Cal.App.4th 1361, 1381; *People v. Timms* (2007) 151 Cal.App.4th 1292, 1298.)

Because the trial court does not have a sua sponte duty to provide modifications or additions to accurate statements of law, defendant was required to request any modifications or additions to the voluntary intoxication instruction.  (*People v. Lee* (2011) 51 Cal.4th 620, 638 ["failure to request clarification of an otherwise correct instruction forfeits the claim of error for purposes of appeal"]; *People v. Verdugo* (2010) 50 Cal.4th 263, 295 [trial court not required to give pinpoint instruction on voluntary intoxication unless requested to do so].)  Defendant did not do so, and the Attorney General argues that he has therefore forfeited those arguments on appeal.

---

[2]  Effective January 1, 2013, Penal Code former section 22 was renumbered as Penal Code section 29.4; no substantive changes were made to the statute.  (Stats. 2012, ch. 162, § 119.)  Section 29.4 provides:  "(a) No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his or her having been in that condition.  Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act.  [¶] (b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought.  [¶] (c) Voluntary intoxication includes the voluntary ingestion, injection, or taking by any other means of any intoxicating liquor, drug, or other substance."

We agree with the Attorney General. Both of defendant's arguments of instructional error—that CALCRIM No. 625 improperly precluded the jury from considering his intoxication on his defense of unreasonable self-defense, and on his inability to correctly express himself during his police interrogation—are modifications of or additions to the standard, correct legal statement included in the pattern instruction. Contrary to defendant's argument that the trial court erroneously limited the jury's ability to consider evidence of voluntary intoxication, defendant is actually asking us to increase the jury's ability to consider evidence of voluntary intoxication beyond what is permitted by statute. Both arguments have been forfeited.

Defendant argues, in the alternative, that his trial counsel's failure to object to CALCRIM No. 625, or to propose modifications or additions to it, constitutes ineffective assistance of counsel. In order to successfully claim ineffective assistance of counsel, a defendant must prove two components: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) The first prong of the *Strickland v. Washington* standard is met only "if the record on appeal demonstrates there could be no rational tactical purpose for counsel's omissions." (*People v. Lucas* (1995) 12 Cal.4th 415, 442.) The second prong requires a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington*, *supra*, at p. 694.) We conclude that defendant cannot sustain his burden under either prong of the *Strickland v. Washington* test.

9

## A.

### *Voluntary Intoxication as Having an Effect on the Defense of Imperfect Self-defense*

Defendant argues he was prejudiced by the jury instructions, claiming the jury was prevented from considering whether his voluntary intoxication affected his belief in the need to use deadly force to save his life.

The jury was instructed on the defense of imperfect self-defense with CALCRIM No. 571, as follows: "A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed a person because he acted in imperfect self-defense. If you conclude that the defendant acted in complete self-defense, his action was lawful and you must find him not guilty of any crime. The difference between complete self-defense and imperfect self-defense depends on whether the defendant's belief in the need to use deadly force was reasonable. [¶] The defendant acted in imperfect self-defense if: one, the defendant actually believed he was in imminent danger of being killed or suffering great bodily injury; and two, the defendant actually believed that the immediate use of deadly force was necessary to defend against the danger; but, three, at least one of those beliefs was unreasonable. Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be. [¶] In evaluating the defendant's beliefs, consider all the circumstances as they were known and appeared to the defendant. If you find that Miguel Martel Delacruz threatened or harmed the defendant or others in the past, you may consider that information in evaluating defendant's beliefs. If you find that the defendant knew that Miguel Martel Delacruz had threatened or harmed others in the past, you may consider that information in evaluating the defendant's beliefs. [¶] Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm. [¶] The People have the burden of proving beyond a reasonable doubt that the defendant was not acting in

10

imperfect self-defense. If the People have not met this burden, you must find the defendant not guilty of murder."

In *People v. Turk*, *supra*, 164 Cal.App.4th at page 1381, the appellate court addressed the same issue we face here: "[The defendant] claims that the trial court erred in instructing the jury pursuant to CALCRIM No. 625 because the instruction erroneously informed the jury that it could not consider [the defendant]'s voluntary intoxication in determining whether he harbored malice aforethought. [The defendant]'s primary contention is that while CALCRIM No. 625 informed the jury that it could consider his voluntary intoxication in determining whether he acted with the intent to kill, the instruction implied that the jury could not consider his voluntary intoxication in determining whether he acted with malice aforethought." The jury had been instructed with CALCRIM No. 520, regarding the crime of murder, as well as CALCRIM No. 625. (*People v. Turk*, *supra*, at p. 1381.) "[T]he trial court specifically instructed the jury that, 'The defendant acted with express malice if he unlawfully intended to kill.' The court further instructed the jury that it could consider evidence of [the defendant]'s voluntary intoxication in deciding whether he had acted 'with an intent to kill.' Thus, considering the instructions as a whole, as we must [citation], the trial court adequately informed the jury that it could consider evidence of [the defendant]'s voluntary intoxication on the issue of express malice." (*Id.* at pp. 1382-1383.)

Here, too, the instructions given adequately informed the jury that it could consider evidence of defendant's voluntary intoxication in determining whether defendant acted with an intent to kill (CALCRIM No. 625), that defendant acted with express malice if he unlawfully intended to kill (CALCRIM No. 520), and that murder would be reduced to voluntary manslaughter if defendant acted in imperfect self-defense (CALCRIM No. 571). Before the jury could consider whether defendant acted in imperfect self-defense, it must have found that defendant acted with malice. Considering the instructions as a whole, we conclude the jury was adequately informed it could

11

consider defendant's voluntary intoxication in deciding whether imperfect self-defense applied to negate the finding of malice. No modification to the instruction was necessary, and there is no error in defendant's trial counsel's failure to request one.

Additionally, there is no evidence from which the jury could have concluded defendant's claim of imperfect self-defense was valid, even if it had considered the possible effect of his intoxication. Defendant's statements to Salcedo made clear that defendant did not see a knife in Delacruz's hand; Delacruz was in bed when defendant arrived at the garage; Delacruz did not move toward defendant (much less lunge toward him or attempt to attack him), but rather got up or straightened up; defendant brutally attacked Delacruz before he had a chance to defend himself; and defendant hated Delacruz and was happy he was dead. Defendant's actions after the killing—quickly putting on a sweater and going out drinking and dancing, and having a good time at a bar—are inconsistent with a claim that defendant attacked Delacruz because he reasonably believed Delacruz was about to kill him. Under any standard of prejudice, defendant's claim of ineffective assistance of counsel fails.

## B.

### *Voluntary Intoxication as Having an Effect on Defendant's Ability to Express Himself in the Police Interrogation*

Defendant also argues that by instructing the jury with CALCRIM No. 625, the trial court prejudicially "prevented jurors from considering voluntary intoxication as it related to the content and completeness of [defendant]'s law enforcement interview." At root, defendant's argument on appeal is that his responses during the police interrogation did not explain what Delacruz had done on one or more previous occasions, which caused defendant to be in fear of his life just before he attacked Delacruz, and that the jury should have been able to consider his voluntary intoxication to explain why he did not provide that information to Salcedo. Even if it were proper for the jury to

12

consider defendant's voluntary intoxication on this point (a point with which we do not agree, but need not address for purposes of this opinion), to accept defendant's argument would require the jury to speculate about what defendant's answers would have been to the questions Salcedo did not ask, or how defendant's incomplete or incomprehensible answers should be interpreted. Defendant provides us with no authority justifying such speculation by the jury.

Defendant also fails to establish prejudice. There was no evidence that defendant's voluntary intoxication affected his responses during the interrogation. Salcedo testified defendant did not appear intoxicated, and was calm and cooperative during his interrogation. Defendant was able to clearly and remorselessly express himself when implicating himself in Delacruz's murder; there would be no reason for the jury to believe he could not have clearly expressed himself in trying to mitigate his responsibility for the crime.

Defendant cites *People v. Wiidanen* (2011) 201 Cal.App.4th 526 (*Wiidanen*), in support of his argument. In that case, the appellate court held the trial court erred by instructing the jury with both CALCRIM No. 362 (regarding consciousness of guilt)[3] and CALCRIM No. 3426 (regarding voluntary intoxication),[4] but

---

[3] The jury in *Wiidanen*, *supra*, 201 Cal.App.4th at page 532, footnote 4, was instructed with CALCRIM No. 362, as follows: "'If the defendant made a false or misleading statement relating to the charged crime, knowing that the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt. [¶] 'If you conclude that the defendant made the statement, it is up to you to decide its meaning and importance. However, evidence that the defendant made such a statement cannot prove guilt by itself.'"

[4] The jury in *Wiidanen*, *supra*, 201 Cal.App.4th at page 532, footnote 5, was instructed with CALCRIM No. 3426, as follows: "'You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant had the knowledge that the victim was unconscious of the act at the time of its occurrence. [¶] 'A person is voluntarily intoxicated if he or she becomes intoxicated by willingly using any intoxicating drugs, drink, or other substance knowing it could produce an intoxicating effect or willingly assuming the risk of that effect. [¶] 'You may not consider evidence of voluntary

13

that the error was harmless.  (*Wiidanen*, *supra*, at p. 528.)  The court held, "a defendant's false or misleading statements made when he was intoxicated may not be probative of the defendant's veracity, if the jury believed the defendant was too intoxicated to know his statements were false or misleading."  (*Id.* at p. 533.)  Defendant concedes that *Wiidanen* is not on point, but argues that its "broader holding" applies here.  We disagree that *Wiidanen* stands for any broad principle that Penal Code section 29.4 can be ignored to allow a jury to consider a defendant's voluntary intoxication for any purposes other than those specified in the statute.

## III.

### *Cumulative Error*

Defendant also argues that the cumulative nature of the errors, addressed *ante*, requires reversal.  Because we have concluded that the trial court did not err, we reject defendant's claim of cumulative error.

## IV.

### *Administrative Fee*

Before defendant's sentencing, the California Victim Compensation and Government Claims Board submitted a request for restitution from defendant.  The request sought a restitution order in the amount of $7,500, which the board had paid to Delacruz's family for funeral and burial expenses.  The trial court entered a restitution order in the amount requested.  Defendant does not challenge the amount of the restitution order.

---

intoxication for any other purpose. If you conclude beyond a reasonable doubt the People have proved all of the elements of the crime, the mere fact that the defendant was voluntarily intoxicated is not a defense to the crime.'"

14

The court's restitution order includes "an administrative fee at 10 percent of the restitution owed," citing Penal Code section 1203.1, subdivision (*l*). Defendant contends the administrative fee is statutorily unauthorized, and must be stricken.[5]

Defendant argues, and the Attorney General concedes, that an administrative fee could not be imposed under Penal Code section 1203.1, subdivision (*l*), because that statute applies only when a defendant is placed on probation. (*People v. Robertson* (2009) 174 Cal.App.4th 206, 210-211; *People v. Eddards* (2008) 162 Cal.App.4th 712, 716.) We agree, and accept the Attorney General's concession that the reference in the restitution order to section 1203.1, subdivision (*l*) must be stricken.

The Attorney General argues that this court should amend the abstract of judgment to replace the reference to an administrative fee under Penal Code section 1203.1, subdivision (*l*), with a reference to an administrative fee under Penal Code section 2085.5, subdivision (e).[6] Section 2085.5 provides, in relevant part: "(c) In any case in which a prisoner owes a restitution order imposed pursuant to . . . subdivision (f) of Section 1202.4, the Secretary of the Department of Corrections and Rehabilitation shall deduct a minimum of 20 percent or the balance owing on the order amount, whichever is less, up to a maximum of 50 percent from the wages and trust account deposits of a prisoner, unless prohibited by federal law. The secretary shall transfer that amount to the California Victim Compensation and Government Claims Board for direct payment to the victim, or payment shall be made to the Restitution Fund to the extent that the victim has received assistance pursuant to that program. The sentencing court shall be provided a record of the payments made to victims and of the

_____

[5] Defendant argues that, although he did not raise this issue in the trial court, it has not been forfeited because the improper inclusion of the administrative fee makes it an unauthorized sentence. (See generally *People v. Smith* (2001) 24 Cal.4th 849, 852.) The Attorney General does not dispute that we may consider this issue on appeal.

[6] The Attorney General actually references Penal Code section 2085.5, former subdivision (c), but that statute was amended effective January 1, 2013. (Stats. 2012, ch. 762, § 3.)

15

payments deposited to the Restitution Fund pursuant to this subdivision.  [¶] . . . [¶] (e) The secretary shall deduct and retain from the wages and trust account deposits of a prisoner, unless prohibited by federal law, an administrative fee that totals 10 percent of any amount transferred to the California Victim Compensation and Government Claims Board pursuant to subdivision . . . (c)."

Penal Code section 2085.5 creates an administrative duty on the part of the Department of Corrections and Rehabilitation to add an administrative fee to the amounts being withheld from a prisoner's wages to pay the amounts included in the restitution order entered by the trial court.  As the statute already so requires, there is no need for the trial court's restitution order or the abstract of judgment to include reference to section 2085.5.  We therefore decline the Attorney General's request that the restitution order and the abstract of judgment be modified to refer to section 2085.5.

DISPOSITION

The judgment is affirmed.  We direct the trial court to amend the restitution order by deleting the reference to Penal Code section 1203.1, subdivision (*l*); in all other respects, the restitution order is affirmed.

FYBEL, J.

WE CONCUR:

MOORE, ACTING P. J.

IKOLA, J.

16