Filed 3/18/25  P. v. Gomez-Santillan CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VIRGINIO GOMEZ-SANTILLAN,<br><br>    Defendant and Appellant. | 2d Crim. No. B329727<br>(Super. Ct. No. 21CR04705)<br>(Santa Barbara County) |

Virginio Gomez-Santillan appeals the judgment after a jury convicted him of assault with the intent to commit rape or sexual penetration upon an unconscious person during the commission of a residential burglary (Pen. Code,[1] § 220, subd. (b), count 1); first degree residential burglary with a person present (§ 459, count 2); and genital penetration of an unconscious person by a foreign object (§ 289, subd. (d); count 4).  The jury did not find

---

[1] Further unspecified statutory references are to the Penal Code.

him guilty of count 3, felony sexual battery by restraint (§ 243.4, subd. (a)) but found him guilty of the lesser included offense of misdemeanor sexual battery. For count 1, the trial court sentenced Gomez-Santillan to life in prison with the possibility of parole after seven years and stayed the punishment for counts 3 and 4 pursuant to section 654. On the prosecution's motion, the court dismissed count 2 for burglary as a lesser included offense within count 1.

Gomez-Santillan contends there was insufficient evidence to support assault with intent to commit rape or sexual penetration of an unconscious person.[2] He also contends the court erred in giving a corpus delicti instruction and instructing the jury on consciousness of guilt without modifying the voluntary intoxication instruction. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Jane Doe lived with her two sons in a one-bedroom apartment in Santa Barbara. She partitioned her living room so that half of the room was a bedroom where she and her youngest son slept. Her eldest son slept in the other bedroom.

Gomez-Santillan was Doe's next-door neighbor. He lived with his wife, brother, and three sons. His relationship with Doe was "neighborly." Their youngest children played with each other. Doe had been to Gomez-Santillan's apartment about three times—once for one of his sons' birthday party and the other times to pick up her son.

On July 21, 2021, Nathan Starkey, the father of Doe's sons, was at Doe's apartment in the evening. Doe went to bed with her

---

[2] He contends reversal of count 1 for insufficient evidence of intent to commit rape or sexual penetration also requires reversal of counts 2 and 4.

youngest son around 10:00 or 11:00 pm. Doe heard Starkey leave and then fell asleep. Starkey did not lock the door behind him because the door could not be locked from the outside.

Doe woke up when she felt pinching on her chest and felt "a presence" on her. She initially thought it was Starkey but when she opened her eyes, she saw Gomez-Santillan. He was lying on top of her. He had pulled up her shirt and was kissing her chest and breasts. Her pants were down to her ankles. He also kissed her cheek, face, and neck and touched her vagina with his fingers. She "kind of screamed and was in shock." He told her, "It's your neighbor." She began slapping him. He told her, "Shhh," and pointed to her son sleeping next to her. She repeatedly said, "Get off me. Get off me." He asked, "Are you sure?" She replied, "Yes. Get the fuck off me." He stood up, pulled up his pants, and left. Doe said Gomez-Santillan smelled of alcohol.

Doe called Starkey, and he called the police. When the police arrived, she identified Gomez-Santillan as the person who assaulted her. She had a sexual assault response team (SART) examination in the morning. A nurse took DNA swabs on various parts of Doe's body, and Gomez-Santillan's DNA was found on most samples.

Police immediately contacted Gomez-Santillan after speaking with Doe, and she identified him in a field identification. Police officers interviewed him at the apartment complex, and the recorded interview was presented to the jury. During the interview, Gomez-Santillan denied making sexual advances towards Doe. He said he did not remember going into her house, taking off her pants, and kissing her. He did not know why Doe was alleging he had assaulted her; although he

3

admitted being drunk, he did not intend to sexually assault Doe. He was not sure if he had mistakenly gone into Doe's apartment thinking it was his. He had three beers that evening. He did not remember trying to kiss his wife when he got home. The interviewing police officer testified that Gomez-Santillan appeared to answer the questions coherently.

Doe testified that about a year before the incident, Gomez-Santillan asked her to have sex with him. On that occasion, she was standing in her living room when Gomez-Santillan walked inside her apartment and asked to use her bathroom. After he used her restroom, he sat on her couch and asked questions about Starkey and their relationship. When she denied being in a relationship with Starkey, Gomez-Santillan responded, "Oh, well, maybe we can have sex one day." She told him to leave, and he did.

Gomez-Santillan testified on behalf of his own defense. He said he consumed three micheladas and one Smirnoff (a juice with tequila) on the evening of the incident. He said he accidentally went to Doe's apartment believing it was his. He did not notice he was in the wrong apartment because it was dark. He went to the bed and started kissing Doe, thinking she was his wife. He said he did not realize it was not his wife until he touched her hair. Doe had been slowly responding; Gomez-Santillan had kissed her and she kissed him back. But then Doe became "very upset" and slapped him, telling him "to get the fuck off of her." Gomez-Santillan then asked Doe in English, "Are you sure?" Gomez-Santillan denied taking off Doe's pants or touching her vagina.

DISCUSSION

*Sufficiency of evidence*

Gomez-Santillan contends reversal for count 1 is required because there was insufficient evidence that he intended to commit rape or sexual penetration. We disagree.

We review the whole record in the light most favorable to the judgment below to determine " 'whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We ' "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' [Citation.]" (*People v. Davis* (1995) 10 Cal.4th 463, 509 (*Davis*).)

Assault with intent to commit rape or sexual penetration requires the specific intent to commit the underlying sexual offense. (*People v. Earle* (2009) 172 Cal.App.4th 372, 392.) " 'The essential element of [assault with intent to commit rape] is the intent to commit the act against the will of the complainant. The offense is complete if at any moment during the assault the accused intends to use whatever force may be required.' [Citation.] . . . '[I]f there is evidence of the former intent and acts attendant to the execution of that intent, the abandonment of that intent before consummation of the act will not erase the felonious nature of the assault.' [Citation.]" (*Davis*, *supra*, 10 Cal.4th at pp. 509-510.)

Here, the prosecution pursued three different theories: (1) that Gomez-Santillan intended to rape by force or fear (§ 261, subd. (a)(2)); (2) that he intended to rape an unconscious person

5

(§ 261, subd. (a)(4); and (3) that he intended to sexually penetrate an unconscious person (§ 289, subd. (d)).

Rape and sexual penetration of an unconscious person requires that the victim be unaware of the nature of the act because they are unconscious and that the perpetrator has knowledge the victim is unable to resist because of their unconsciousness. A victim is unconscious of the nature of the act if they are unconscious, asleep, or not aware the act is occurring. (§§ 261, subd. (a)(4), 289, subd. (d); CALCRIM Nos. 1003, 1048.) Sexual penetration of an unconscious person is accomplished when the defendant sexually penetrates the victim using a foreign object. (§ 289, subd. (d).)

Substantial evidence supports that Gomez-Santillan intended to rape and/or sexually penetrate an unconscious person. (§§ 261, subd. (a)(4), 289, subd. (d).) Gomez-Santillan entered Doe's apartment without permission while she was sleeping. He climbed on top of Doe, who was much smaller in size and weight, and he pulled down his pants. While Doe was still asleep, he lifted her shirt, pulled down her pants, and began kissing her chest and neck and touching her vagina with his fingers. (See *People v. Craig* (1994) 25 Cal.App.4th 1593, 1600 [evidence of physical acts leading towards intercourse supported an intent to commit rape].) The acts were committed against Doe's will, and she immediately told Gomez-Santillan to get off her when she woke up and realized what was happening. The jury could have reasonably concluded from this evidence that Gomez-Santillan knew Doe was sleeping and was unable to resist when he began touching her. We will not reverse the jury's verdict unless upon no reasonable hypothesis is there sufficient evidence to support the jury's conclusion. (*People v. Bard* (1968)

6

70 Cal.2d 3, 4-5.) The evidence here supports the jury's finding that Gomez-Santillan intended to rape or sexually penetrate an unconscious Doe.[3]

We also reject Gomez-Santillan's claim that he was too intoxicated and mistook Doe's identity for his wife. Doe testified that he told her, "It's your neighbor" when she woke up. And when Doe told Gomez-Santillan "to get the fuck off of her," Gomez-Santillan asked her in English, "Are you sure?" Because the jury could reject his version of events, reversal is not warranted. We do not reweigh the evidence on appeal. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

*Corpus delicti and consciousness of guilt instructions*

Gomez-Santillan contends the trial court erred in giving a corpus delicti instruction (CALCRIM No. 359) and an instruction regarding consciousness of guilt (CALCRIM No. 362). He contends the evidence did not support these instructions, they were inapplicable to the facts, and they reduced the prosecutor's burden of proof. We conclude there was no error.

The trial court instructed the jury that the "defendant may not be convicted of any crime based on his out-of-court statements alone. You may rely on the defendant's out-of-court statements to convict him only if you first conclude that other evidence shows that the charged crime was committed. [¶] That other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed. [¶] . . . [¶] You may not convict the defendant unless the People have proved

---

[3] Because substantial evidence supports an intent to rape or sexually penetrate an unconscious person, we need not address whether substantial evidence supports an intent to forcibly rape Doe. (§ 261, subd. (a)(2).)

7

his guilt beyond a reasonable doubt." (CALCRIM No. 359.) The court also instructed that if "the defendant made a false or misleading statement before this trial relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt. [¶] . . . However, evidence that the defendant made such a statement cannot prove guilt by itself." (CALCRIM No. 362.)

Gomez-Santillan contends the court erred in giving these instructions because his statements during the police field interview were not inculpatory or false/misleading. He contends his statements merely show he did not remember, was not sure of what he had done, and that he was drunk and confused. In our view, the record reflects otherwise. During the field interview, Gomez-Santillan denied making sexual advances, denied taking off Doe's pants and kissing her, denied having intentions to assault her, and said he didn't know why Doe alleged he assaulted her. But Gomez-Santillan testified that after kissing Doe's neck and breasts and realizing he had mistaken Doe for his wife, he then asked Doe, "Are you sure?" Based on this evidence, the jury could have inferred a consciousness of guilt based on Gomez-Santillan's denials to law enforcement.

Gomez-Santillan also contends the corpus delicti instruction reduced the prosecutor's burden of proof because the instruction states that evidence apart from the false or misleading statements need only be "slight." We are not persuaded.

In assessing a claim of instructional error, "we consider the instructions as a whole, in light of one another, and do not single out a word or phrase, and ' "assume that the jurors are intelligent

8

persons and capable of understanding and correlating all jury instructions which are given." ' [Citation.]" (*People v. Holmes* (2007) 153 Cal.App.4th 539, 545-546.)  We ask whether there is a reasonable likelihood the jury misconstrued or misapplied the law in light of the instructions given the entire record of the trial and the arguments of counsel.  (*People v. Fiu* (2008) 165 Cal.App.4th 360, 370.)

The corpus delicti rule requires that "every element of the 'body of the crime' necessary to show the commission of a crime by somebody, i.e. 'the fact of injury, loss, or harm, and the existence of a criminal agency as its cause' [citation]" be proved independently of the defendant's extrajudicial statements. (*People v. Miranda* (2008) 161 Cal.App.4th 98, 107, italics omitted.)  The purpose of the rule is to ensure that the defendant is not falsely convicted, by their untested words alone, of a crime that never occurred.  (*Ibid.*)  "There is no requirement of independent evidence 'of every physical act constituting an element of an offense,' so long as there is some slight or prima facie showing of injury, loss, or harm by a criminal agency. [Citation.]  In every case, once the necessary quantum of independent evidence is present, the defendant's extrajudicial statements may then be considered for their full value to strengthen the case on all issues."  (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1171 (*Alvarez*).)

We conclude the trial court correctly instructed the jury. CALCRIM No. 359 accurately instructed jurors that they must find other independent evidence that supports the charged crime was committed, however slight, before it could consider Gomez-Santillan's extrajudicial statements.  (*Alvarez, supra*, 27 Cal.4th 1171; *People v. Reyes* (2007) 151 Cal.App.4th 1491, 1498.)  Nor

did the instruction reduce the prosecution's burden of proof. The court instructed the jury with CALCRIM No. 220, which instructs the jury on the reasonable doubt standard and that the People must "prove a defendant guilty beyond a reasonable doubt." And CALCRIM No. 359 emphasized to the jury that it "may not convict the defendant unless the People have proved his guilt beyond a reasonable doubt." There is no reasonable likelihood the jury misconstrued or misapplied the law in light of the instructions given. (*Fiu, supra,* 165 Cal.App.4th at p. 370.)

*Unmodified voluntary intoxication instruction*

The trial court instructed the jury on voluntary intoxication with CALCRIM No. 3426 as follows: "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with [the] specific intent or mental state required for [the charged crimes]." The instruction further stated that the jury "may not consider the evidence of voluntary intoxication for any other purpose." The court did not modify CALCRIM No. 3426 nor modify CALCRIM No. 362 regarding consciousness of guilt. Gomez-Santillan requested no modifications. He now contends the trial court should have modified CALCRIM No. 3426 to allow the jury to consider whether his statements to law enforcement were knowingly false given the evidence of his voluntary intoxication.

Gomez-Santillan also contends the combination of the two unmodified jury instructions violated due process by creating an "irrational permissive inference"—that he was aware of his guilt when he made the false or misleading statements to the police. A permissive inference violates due process " 'only if the suggested conclusion is not one that reason and common sense justify in

10

light of the proven facts before the jury.' [Citation]." (*People v. Wiidanen* (2011) 201 Cal.App.4th 526, 533 (*Wiidanen*), italics omitted.)

Even though Gomez-Santillan did not request modification, we may review the claim of instructional error if it affects his substantial rights. (§ 1259; *People v. Townsel* (2016) 63 Cal.4th 25, 59-60.) If the jury here believed that Gomez-Santillan's statements to law enforcement indicated his consciousness of guilt, jurors should have been allowed to consider whether he was intoxicated when he made the statements and whether his intoxication prevented him from knowing the statements were false. If the jury believed he was too intoxicated, the statements would not have been probative of Gomez-Santillan's consciousness of guilt. Such error would affect his substantial rights if the error resulted in a miscarriage of justice under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*People v. Anderson* (2007) 152 Cal.App.4th 919, 927 [error affects a defendant's substantial rights if it is reasonably probable a more favorable result would have been reached in the absence of the error].)

Here, we conclude there was no miscarriage of justice because there was overwhelming evidence that Gomez-Santillan assaulted Doe, consisting of her testimony, positive identification, and the DNA evidence. The jury rejected Gomez-Santillan's defense that he mistakenly believed he walked into his own apartment and believed he was kissing his wife because he was intoxicated. Because there is no reasonable probability of a more favorable result, the error is harmless. (*Watson*, *supra*, 46 Cal.2d at p. 837.)

We also conclude there was no due process violation because the instructions did not create an irrational permissive inference. The jury rejected the defense theory that Gomez-Santillan was so intoxicated that he mistook Doe for his wife. Gomez-Santillan testified that after kissing Doe's neck and breasts and realizing he had mistaken Doe for his wife, he asked Doe, "Are you sure?" The jury also reviewed the police interview and the testimony of the interviewing officer, who testified that Gomez-Santillan appeared to answer the questions coherently. Because the jury could reasonably conclude from this evidence that Gomez-Santillan was aware of his guilt when he denied having sexual contact with Doe, there was no due process violation. (See *Wiidanen, supra,* 201 Cal.App.4th at pp. 532-534 [error to instruct on voluntary intoxication and consciousness of guilt instructions together without modification, but error was harmless and the error did not create an irrational permissive inference]; see also *People v. McGehee* (2016) 246 Cal.App.4th 1190, 1203-1207.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

GILBERT, P. J.                    CODY, J.

12

Pauline Maxwell, Judge

Superior Court County of Santa Barbara

_____

Maxine Weksler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.