Filed 3/19/25  P. v. Fonseca CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B331679 |
| Plaintiff and Respondent, | (Super. Ct. No. VA151037) |
| | (Los Angeles County) |
| v. | |
| JOSE REFUGIO FONSECA, | |
| Defendant and Appellant. | |

Jose Refugio Fonseca appeals from the judgment after a jury convicted him of first degree murder (Pen. Code,[1] §§ 187, subd. (a), 189, subd. (a)), possession of a firearm by a felon (§ 29800, subd. (a)(1)), and second degree robbery (§§ 211, 212.5, subd. (c)), and found true allegations that he personally used a firearm, personally and intentionally discharged a firearm, and personally and intentionally discharged a firearm causing great bodily injury or death when he committed murder (§ 12022.53, subds. (b), (c), & (d)).  Fonseca admitted that his crimes caused

---

[1] Statutory references are to the Penal Code.

great bodily harm (Cal. Rules of Court, rule 4.421(a)(1)), that he used a weapon (*id.*, rule 4.421(a)(2)), and that he had suffered prior convictions of increasing seriousness (*id.*, rule 4.421(b)(2)). The trial court sentenced him to 51 years to life in state prison: 25 years to life for murder, 25 years for discharging a firearm causing great bodily injury or death, and one year (one-third the middle term) for robbery. The court also imposed a concurrent three years (the upper term) on Fonseca's firearm possession conviction.

Fonseca contends: (1) there was insufficient evidence that he committed robbery, (2) the trial court prejudicially erred when instructing the jury, (3) the prosecutor committed misconduct, (4) the matter should be remanded for the court to exercise its discretion to strike or impose the firearm enhancement, and (5) his custody credits were miscalculated. We agree that Fonseca is entitled to one more day of custody credits, but otherwise affirm.

FACTUAL AND PROCEDURAL HISTORY

In June 2019, Anthony Beltran and Cesar Gonzalez were at a fast-food restaurant in Cudahy. Fonseca and Victor Tremino, both local gang members, arrived at the restaurant in a small car. The restaurant is located in Fonseca's gang's territory.

When Fonseca and Tremino got out of the car, Gonzalez retreated to the restaurant doorway. Tremino took Gonzalez's bicycle and rode away. Fonseca followed Gonzalez toward the restaurant and punched him in the face, knocking him to the ground.

Beltran ran to a nearby gas station. Fonseca followed and began beating Beltran. He then removed a firearm from his waistband and repeatedly shot Beltran, killing him. He was

2

approximately 53 feet away from Beltran when he fired.  Fonseca discarded the firearm as he fled the crime scene.

Police arrested Fonseca later that day.  During an interview Fonseca told police that when his car arrived at the fast-food restaurant the driver ordered him to get out.  He said he followed Beltran to "beat his ass" because Beltran had stabbed him earlier.  Fonseca claimed he shot in self-defense; he did not aim at or intend to kill Beltran.  When the shots hit Beltran, Fonseca panicked and fled.

At trial, Fonseca testified that he had been a gang member since he was 12 years old.  He was under the influence of methamphetamine when he talked to police shortly after his arrest.

Fonseca said he and his companions went to the fast-food restaurant to eat.  Everyone in the car was under the influence of methamphetamine.  Beltran approached the car, said something to one of the passengers, and made a stabbing motion.  He was holding a small knife.  Fonseca tried to get out of the car but Beltran reached inside and stabbed his wrist.  Beltran also tried to prevent the car door from opening.

Beltran then ran away.  When Fonseca saw him a few minutes later, he decided to fight him.  During the fight Beltran pulled out his knife and stabbed Fonseca again.  Fonseca—who was under the influence of methamphetamine, is hypervigilant, and has PTSD—took out his firearm and shot.  He did not intend to kill Beltran, only scare him.

Fonseca said he did not participate in taking Gonzalez's bicycle but instead told Tremino to return it.  He only hit Gonzalez because Gonzalez said he would call police if his bike was not returned.

3

A psychologist interviewed Fonseca while he was in custody. He testified that Fonseca suffers from major depressive disorder, PTSD, and polysubstance abuse disorder.

## DISCUSSION

### *Sufficiency of the evidence*

Fonseca first contends the evidence was insufficient to prove he aided and abetted Tremino's robbery of Gonzalez. We disagree.

A person is criminally liable as an aider and abettor if they: (1) know of the perpetrator's unlawful purpose, (2) intend to facilitate or encourage the perpetrator's commission of a crime, and (3) by act or advice, aid, promote, encourage, or instigate that commission. (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164 (*Cooper*).) Whether the person has aider and abettor liability " 'ordinarily is a question of fact.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 (*Nguyen*).) Among the factors to consider include " 'presence at the scene of the crime, failure to take steps to attempt to prevent the commission of the crime, companionship, flight, and conduct before and after the crime.' " (*People v. Garcia* (2008) 168 Cal.App.4th 261, 273.)

"Robbery is the felonious taking of personal property in the possession of another, from [their] person or immediate presence[] and against [their] will, accomplished by means of force or fear." (§ 211.) "The taking element of robbery" requires "gaining possession of the victim's property and asporting or carrying away the loot." (*Cooper*, *supra*, 53 Cal.3d at p. 1165.) "[A]sportation is not confined to a fixed point in time"; it "continues . . . as long as the loot is being carried away to a place of temporary safety." (*Ibid.*) Therefore, "[f]or purposes of determining aider and abettor liability, the commission of a

4

robbery continues until all acts constituting the offense have ceased." (*Id.* at p. 1164, italics omitted.)

Reviewing the whole record in the light most favorable to the judgment (*Nguyen, supra*, 61 Cal.4th at p. 1054), we conclude substantial evidence supports Fonseca's conviction for aiding and abetting Tremino's robbery of Gonzalez. Fonseca and Tremino arrived at the fast-food restaurant together. They got out of their car at the same time. Fonseca was present when Tremino took Gonzalez's bicycle. He took no steps to prevent the robbery and it can be rationally inferred that he assisted Tremino's escape to a place of temporary safety by following Gonzalez to the restaurant door, punching him in the face, and knocking him to the ground. Fonseca also told jurors that that he hit Gonzalez after he threatened to call police. Considered together, these facts provide substantial evidence to support the jury's conclusion that Fonseca knew that Tremino took Gonzalez's bicycle and aided and abetted robbery. (See, e.g., *In re Juan G.* (2003) 112 Cal.App.4th 1, 5 [minor aided and abetted robbery based on arrival with, proximity to, and departure from scene with perpetrator]; *People v. Campbell* (1994) 25 Cal.App.4th 402, 409-410 [defendant aided and abetted robbery where he approached victim with perpetrator and remained present during robbery].)

This case is unlike *In re K.M.* (2022) 75 Cal.App.5th 323, on which Fonseca relies. In *K.M.*, our colleagues in the First District reversed a finding that a minor had aided and abetted a robbery. (*Id.* at p. 331.) There, the record showed that the victim "could only guess what actions [the minor] may have taken"; at most the evidence showed that he threatened the victim, but that only delayed the perpetrator's escape. (*Id.* at p. 329.) Here, in contrast, the victim did not have to guess as to Fonseca's actions.

5

Fonseca followed Gonzalez and then punched him in the face after the latter threatened to call police. And unlike the situation in *K.M.* those actions helped Tremino's escape from the scene.

Fonseca's comparison of this case to *Juan H. v. Allen* (9th Cir. 2005) 408 F.3d 1262 is similarly misplaced. In that case there was no evidence that the minor did or said anything before, during, or after to aid and abet his brother's shootings; he merely stood unarmed while his brother shot the victims. (*Id.* at pp. 1278-1279.) But Fonseca was not merely present at the crime scene here. His actions—arriving at the fast-food restaurant with Tremino and then assaulting Gonzalez while Tremino rode away—encouraged and aided Tremino's actions. Substantial evidence supports the conclusion that Fonseca aided and abetted a robbery.

*Jury instructions*

During the discussion on jury instructions the prosecutor requested that the trial court instruct jurors on false or misleading statements made by Fonseca. (See CALCRIM No. 362.) Fonseca objected. The court found substantial evidence supported the instruction and overruled Fonseca's objection.

Later during the discussion the trial court said that it would modify CALCRIM Nos. 3426 and 3428 to specify the charges and allegations where voluntary intoxication and mental impairment could be considered defenses. Fonseca did not object to the use of either of these jury instructions or the court's proposed modifications, nor did he propose any additional modifications.

CALCRIM No. 362 told the jury that if Fonseca "made a false or misleading statement before his trial relating to the charged crime[s], knowing the statement was false or intending

6

to mislead, that conduct may show he was aware of his guilt of the crime[s], and [jurors could] consider it in determining his guilt." CALCRIM No. 3426 told jurors that they could consider evidence of Fonseca's voluntary intoxication "only in deciding whether [he] acted with the intent to do the act required" and not "for any other purpose." CALCRIM No. 3428 similarly told jurors that they could consider evidence of Fonseca's mental impairment "only for the limited purpose of deciding whether, at the time of the charged crime[s], [he] acted with the intent or mental state required for [those] crime[s]" and not "for any other purpose."

Fonseca concedes substantial evidence supported CALCRIM No. 362. But he contends the trial court erred by failing to modify CALCRIM Nos. 3426 and 3428 to permit jurors to consider whether any false or misleading statements he made to police were due to voluntary intoxication or mental impairment. We agree. (See *People v. McGehee* (2016) 246 Cal.App.4th 1190, 1203-1207; *People v. Wiidanen* (2011) 201 Cal.App.4th 526, 532-534 (*Wiidanen*).) But Fonseca did not object to the use of CALCRIM Nos. 3426 and 3428, nor did he propose the modifications he now claims the court should have made. That " 'forfeits the issue on appeal unless the error affect[ed] [his] substantial rights.' " (*McGehee*, at p. 1203.) For the reasons set forth below, we conclude the error did not result in a miscarriage of justice, and therefore did not affect Fonseca's substantial rights. (*Ibid.*)

An erroneous jury instruction results in a miscarriage of justice if it is " 'reasonably probable that a result more favorable to the appealing party would have been reached in the absence of

7

the error.' "[2]  (*Wiidanen*, *supra*, 201 Cal.App.4th at p. 534, quoting *People v. Watson* (1956) 46 Cal.2d 818, 836.)  In our view, there is no reasonable probability of a more favorable result.  At trial, Fonseca did not claim that his methamphetamine use prevented him from knowing his statements to police were false.  Instead, he argued that he had testified to the "exact same thing" he told police on the day of the murder: "his truth"—i.e., that he shot Beltran in self-defense and did not intend to kill him.  Any limitation the instructions placed on the jury's consideration of Fonseca's methamphetamine use or mental impairment during his police interview was therefore irrelevant.  Additionally, the evidence presented at trial included surveillance video showing Fonseca shoot Beltran from more than 50 feet away, undermining any claim that he shot in self-defense.  The jury was also instructed on both perfect and imperfect self-defense and rejected both theories.  Accordingly, we conclude the instructional error did not result in a miscarriage of justice.  Reversal is not warranted.

*Prosecutorial misconduct*

Fonseca next contends the prosecutor committed misconduct during summation and closing argument by (1) claiming Fonseca's defenses "only surfaced after getting a lawyer," and (2) repeatedly calling him a liar.  We are not persuaded.

---

[2] Fonseca claims the erroneous jury instructions affected his federal constitutional rights, entitling him to harmless error review under *Chapman v. California* (1967) 386 U.S. 18.  This claim lacks analysis, and we reject it.  (Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Rowland* (1992) 4 Cal.4th 238, 267 [arguments unsupported by "compelling authority or persuasive reasoning" may be summarily rejected].)

## 1. Additional background

During summation the prosecutor said that Fonseca only began to blame his crimes on his medications and PTSD after he secured an attorney. Fonseca did not object.

The prosecutor also told jurors they should "disregard anything [Fonseca] says that is self-serving. The main reason is because the evidence shows he's a lying liar who lies and . . . because he was caught red handed." The prosecutor repeated this line of argument several more times, calling Fonseca a "lying liar who lies" and telling jurors it should be "easy" to disregard the testimony of "someone who lies [so] much" and "changes their story" as often as Fonseca did. He encouraged jurors to disbelieve Fonseca "because he's lying" and has "lied so many times already."

Fonseca objected to the prosecutor's "choice words," arguing they could inflame the jury. The trial court overruled the objection. It had already instructed jurors that attorney statements are not evidence, and it believed they would follow the instructions.

During his closing argument the prosecutor also called Fonseca a "proven liar." The trial court overruled Fonseca's objection to the disparagement.

## 2. Analysis

A prosecutor commits misconduct when their conduct "infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury. Furthermore, and particularly pertinent here,

9

when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Morales* (2001) 25 Cal.4th 34, 44.)

We see no such likelihood here based on the record. As to Fonseca's contention regarding the prosecutor's comments about when his defenses arose, Fonseca did not object, nor has he shown that an objection would have been futile. The contention is forfeited. (*People v. Dykes* (2009) 46 Cal.4th 731, 769-770.) We also note that courts have routinely found no misconduct despite the use of comments on defense strategies more critical than those used here. (See, e.g., *People v. Stitely* (2005) 35 Cal.4th 514, 559-560 [permissible to tell jurors they should "avoid 'fall[ing]' for counsel's argument" and instead deem it "a 'ridiculous' attempt to allow [the] defendant to 'walk' free"]; *People v. Cummings* (1993) 4 Cal.4th 1233, 1303, abrogated on another point by *People v. Merritt* (2017) 2 Cal.5th 819, 831 [permissible to state defense counsel " 'could maybe get [a witness] to say almost anything' "].)

We reach the same conclusion with respect to the prosecutor calling Fonseca a liar. "Prosecutors 'are allowed a wide range of descriptive comment and the use of epithets [that] are reasonably warranted by the evidence' [citation], as long as the comments are not inflammatory and principally aimed at arousing the passion or prejudice of the jury [citation]." (*People v. Farnam* (2002) 28 Cal.4th 107, 168.) "Referring to testimony as 'lies' is [therefore] an acceptable practice so long as the prosecutor argues inferences based on the evidence and not on . . . personal belief." (*People v. Sandoval* (1992) 4 Cal.4th 155, 180.)

10

That is what occurred here. The prosecutor argued that Fonseca had lied to the jury because he told police a different story than video surveillance from the gas station showed and because he only blamed the shooting on his drug use and PTSD years after the murder occurred. Given these conflicts in the evidence, "the prosecutor was . . . permitted to argue that [Fonseca] was less than truthful." (*People v. Boyette* (2002) 29 Cal.4th 381, 433 [permissible to repeatedly call defendant a "liar"]; see also *People v. Edelbacher* (1989) 47 Cal.3d 983, 1030 [permissible to call defendant "a 'pathological liar' and 'one of the greatest liars in the history of Fresno County' "].)

*Firearm enhancement*

Next, Fonseca contends the matter should be remanded so the trial court can exercise its discretion to strike the firearm enhancement imposed pursuant to section 12022.53, subdivision (d) and impose a lesser enhancement instead. We again disagree.

*1. Additional background*

Fonseca asked the trial court to consider his depression, PTSD, and substance abuse when imposing the sentence. He also asked the court to consider the impact of the stabbings, shootings, and related traumas he had experienced as a young gang member. He urged the court to "impose the minimum sentence" by striking the section 12022.53, subsection (d) enhancement "and, hopefully, [by imposing] some concurrent time with the other charges."

The trial court acknowledged that it had the discretion to strike the firearm enhancement, but "based on the facts and circumstances of this case, everything that came out during the jury trial, [and Fonseca's] history," it opted not to:

11

"There were several shots fired, such a dangerous scenario: gunfire at a gas station with the gas pumps all around, vehicles around, other bystanders. I mean, in the video we see a woman [who's] standing at a bus stop as shots are being fired . . . . And she runs for her life into the gas station—extremely, extremely dangerous scenario. And it is completely amazing that nobody else got shot other than, unfortunately, Mr. Beltran.

"However, because of that, I am declining to exercise my discretion [to stay] the gun allegation. I'm imposing the subsection (d) allegation."

The court then sentenced Fonseca to 50 years to life for killing Beltran: 25 years to life on the murder, and a consecutive 25 years to life on the firearm enhancement.

### 2. Analysis

"[I]n the interest of justice pursuant to [s]ection 1385," a trial court has the discretion to "dismiss an enhancement otherwise required to be imposed by . . . section" 12022.53. (§ 12022.53, subd. (h).) The court may also impose an enhancement prescribing a lesser punishment than that mandated by the dismissed enhancement. (*People v. Tirado* (2022) 12 Cal.5th 688, 700.) When exercising its discretion, "the court shall consider and afford great weight to evidence offered by the defendant to prove . . . any of the mitigating circumstances" set forth in section 1385, subdivision (c)(2). Among those circumstances are that "application of an enhancement could result in a sentence of over 20 years" (*id.*, subd. (c)(2)(C)), "[t]he current offense is connected to mental illness" (*id.*, subd. (c)(2)(D)), and "[t]he current offense is connected to prior victimization or childhood trauma" (*id.*, subd. (c)(2)(E)). "Proof of

12

. . . one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).)

There is no "rebuttable presumption" that the court *must* dismiss an enhancement or impose a lesser one "that can only be overcome by a finding that dismissal endangers public safety," however. (*People v. Walker* (2024) 16 Cal.5th 1024, 1033.) Rather, "if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement." (*Id.* at p. 1036.) But the court must ultimately "determine whether dismissal is in furtherance of justice." (*Ibid.*) "This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Ibid.*)

The trial court properly exercised its discretion here. At sentencing the court was aware it had the discretion to strike the section 12022.53, subdivision (d) enhancement. It nevertheless chose not to exercise that discretion given the facts of the case: that Fonseca fired several shots, with multiple bystanders nearby, in a public place that could explode and injure or kill even more people. Though not using the precise phrase, this amounts to concluding that dismissal of the enhancement would endanger public safety and thus would not be in furtherance of justice. (Cf. *People v. Stowell* (2003) 31 Cal.4th 1107, 1114

13

[appellate court presumes trial court knows and follows the law].) Remand would be an idle act.

*Custody credits*

Finally, Fonseca contends, and the Attorney General concedes, he is entitled to one additional day of custody credits. We agree.

"Everyone sentenced to prison for criminal conduct is entitled to credit against [their] term for all actual days of confinement solely attributable to the same conduct." (*People v. Buckhalter* (2001) 26 Cal.4th 20, 30.) Credits must be given for both the day of arrest and the day of sentencing. (*People v. Smith* (1989) 211 Cal.App.3d 523, 525-527.) Here, Fonseca was arrested on June 19, 2019, and sentenced on June 14, 2023. He is therefore entitled to 1,457 days of custody credits.

DISPOSITION

The clerk of the superior court shall modify the abstract of judgment to indicate that Fonseca has 1,457 days of custody credits, and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

GILBERT, P. J.                              YEGAN, J.

14

Lisa S. Coen, Judge

Superior Court County of Los Angeles

_____

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.